UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA JOHNSON,

    Plaintiff,

v.

AMERICAN SOCIETY FOR PREVENTION
OF CRUELTY TO ANIMALS,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Julia Johnson ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, and states the following in support of her Complaint against Defendant American Society for Prevention of Cruelty to Animals ("Defendant"):

## INTRODUCTION

1. Ms. Johnson served Defendant as an exemplary employee since 2018. Despite working remotely since the pandemic began, Defendant denied Ms.

1

Johnson's religious accommodation request for an exemption from Defendant's COVID-19 vaccine mandate and terminated without justification when she posed zero risk to transmit COVID-19 to colleagues. It is Defendant's current position that "being vaccinated for COVID-19 is no longer a requirement for working with the ASPCA," which makes Ms. Johnson's termination patently unlawful.

## PARTIES AND JURISDICTION

2.  Plaintiff is an individual residing in the City of Rochester, County of Oakland, and State of Michigan.

3.  Defendant is a non-profit organization headquartered in New York, New York.

4.  The Eastern District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in the Eastern District of Michigan pursuant to 42 U.S.C. § 2000e–5(f)(3) because it is the judicial district in which one of the unlawful employment practices is alleged to have been committed.

6.  Plaintiff received a "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC") on October 17, 2022.

## FACTUAL ALLEGATIONS

7. Plaintiff worked remotely for Defendant in her role as Manager of Corporate Policy from June 11, 2018, until her termination on January 3, 2022.

8. Prior to Defendant's COVID-19 vaccine mandate, Plaintiff worked remotely full-time from her home office. From March 2020 through the end of 2021, Plaintiff successfully completed all work duties over zoom and phone calls, without any in-person meetings.

9. Effective December 2021, Plaintiff was promoted to Senior Manager of Corporate Policy for the ASPCA's Farm Animal Welfare Department, demonstrating her success in working fully remote from home without any travel since the onset of the pandemic.

10. Prior to Plaintiff's termination, Plaintiff served Defendant as an exemplary employee who had earned promotion since Defendant initially hired June 2018.

### Defendant's Mandatory Vaccine Policy

11. Defendant announced its mandatory vaccine policy on October 6, 2021.

12. Defendant's mandatory vaccine policy required its employees to be fully vaccinated against COVID-19 by January 3, 2022.

13. Two weeks later, Plaintiff submitted a religious accommodation request.

3

**Plaintiff's Religious Accommodation Request**

14. Plaintiff seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer.

15. Plaintiff's sincerely held and prayerfully developed religious beliefs preclude her from taking the COVID-19 vaccine.

16. Plaintiff worked as a remote employee since on March 13, 2020, around the time COVID-19 broke out, until her termination on January 3, 2022.

17. Plaintiff requested accommodation from Defendant's vaccination requirement on October 20, 2021, stating, in pertinent part:

> With the confusion, misinformation, and fear circulating around the pandemic and the vaccine, I turned to my faith for guidance. I have prayed deeply on the decision whether to become vaccinated and have delved deep into scripture to find God's path for me through this time (Romans). Please respect my request for religious exemption from vaccination, as I will remain unvaccinated. Jesus teaches that our bodies are a temple for the Holy Spirit, and that to find oneness with Him we must make a place for Him within (1 Corinthians). In aligning with my Creator, I maintain purity of my body and ensure that my Savior dwells within me daily.

18. Plaintiff also indicated on her Religious Accommodation Request form her willingness to participate in alternate precautions, such as wearing a mask, social distancing, and continuing to work remotely, stating that:

> When the day comes that my team would like to meet in person, I am committed to wearing a mask indoors when

around ASPCA employees, maintaining social distancing guidelines, and being tested until further notice. I have and will continue to meet department goals – removing the worst practices of factory farming – from the safety of my home.

19. On November 19, 2021, in response to Plaintiff's Religious Accommodation Request, Defendant's Human Resources Representative Antonia Vitale emailed Plaintiff "additional questions" regarding her beliefs.

20. These questions inquired whether Plaintiff has ever refused to have other vaccines or medications because they were developed using human fetal cell lines, whether Plaintiff was aware of any other medications or vaccines used human fetal cell lines in their development, and when she began to hold her beliefs.

21. Defendant's additional questions created a disturbing arbitrary test to evaluate the sincerity of Plaintiff's religious beliefs.

22. Defendant's additional questions were not designed to elicit information that might support Plaintiff's religious accommodation, but rather to extract information that would form a basis to deny Plaintiff's request.

23. Plaintiff responded to Ms. Vitale's questions by stating, "May I ask why you are inquiring about human fetal cells, as my individual sincerely held religious belief statement of faith did not mention this issue? … To answer the third question, it was a few years ago, I do not have a specific date or month."

24. Ms. Vitale replied ten minutes later, simply stating, "[t]hank you for

5

clarifying."

25. Ms. Vitale clearly failed to engage in an interactive process with Plaintiff.

26. On December 2, 2021, Ms. Vitale sent Plaintiff an email denying her religious accommodation request:

> We have carefully considered your request to be exempted from the ASPA's policy that all staff working at the ASPCA must be fully vaccinated, as an accommodation for your sincerely held religious beliefs. Your role requires s travel and face-to-face meetings with industry and other stakeholders. Given the nature of your job duties, we have concluded that we can't have you working in person in any capacity while representing the ASPCA. Even if you were prepared to wear a mask and submit to regular COVID testing, this would not adequately mitigate the risk of illness to you, to potential partners, or to your coworkers – and social distancing is really not feasible, given the nature of the work at issue. Having you at conferences or at in person meetings as a representative of the ASPCA without having been fully vaccinated would pose a direct threat to you and to others….No unvaccinated personnel will be permitted on our premises going forward, until such time as we are satisfied that this level of precaution is no longer necessary and appropriate. Employees governed by the policy who have not requested or been approved for an exemption from the vaccine mandate as a religious (or disability-related) accommodation are no longer qualified for continued employment with the ASPCA and are deemed to be resigning their positions.

27. On December 9, 2021, Plaintiff responded, stating:

> As I stated in my statement of faith, I believe in the work the ASPCA is doing to eliminate the suffering of farm

6

>animals. Before this mandate, I wholeheartedly believed I would be retiring at this organization, building a career based on the core values set forth by the ASPCA. I have performed my job duties these past 21 months without any travel, so much so that I was recently given a promotion to Senior Manager, as you may be aware. I have been able to meet all goals virtually and without any in-person meetings. With this in mind, and the variants circulating that continue to prolong the pandemic, I propose that my traveling is suspended until the ASPCA deems it safe. Once I am approved to travel, I will also cover all testing costs if the ASPCA requires daily testing, as you claim this would be an undue hardship on the organization. I will continue to perform my job duties as prescribed by my Manager and am happy to continue to join all meetings virtually. I hope we can come to an agreement so I can continue my career at the ASPCA.

28. On December 16, 2021, Ms. Vitale denied Plaintiff's accommodation request again via email, stating:

>Given that the essential functions of your role, as described above, requires travel and in person meeting attendance, we have concluded that your unvaccinated status precludes us from having you work in person in any capacity while representing the ASPCA. Even if you were prepared to wear a mask and submit to regular COVID testing, this would not adequately mitigate the risk of illness to you, to potential partners, or to your coworkers – and social distancing is really not feasible, given the nature of the work at issue.

29. The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious

7

accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.").

30. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process — a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

31. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

32. However, no such "bilateral cooperation" occurred during Defendant's excessive questioning of Plaintiff's religious beliefs.

33. Rather than seeking cooperation with Plaintiff and her request for accommodation, Defendant's excessive questioning of Plaintiff sought only to form a basis to deny Plaintiff's request.

34. The sincerity of Plaintiff's religious beliefs is not open to question. *See Equal emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v. Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question.").

35. The United States Equal Employment Opportunity Commission tells

employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

36. In blatant disregard of the EEOC's prototypical accommodation guidelines, Defendant terminated Plaintiff in response to her request for accommodation, stating "[g]iven that the essential functions of [Plaintiff's] role . . . requires in-person activities, [Defendant has] concluded that [Plaintiff's] vaccination status precludes [Defendant] from having [Plaintiff] work in person in person in any capacity while representing the ASPCA."

37. Defendant terminated Plaintiff despite the fact that prior to Defendant's vaccination mandate, Plaintiff had been approved to work fully-remote for the foreseeable future.

**Defendant Violated EEOC Guidance**

38. On March 1, 2022, the EEOC expanded its guidance on religious exemption to employer vaccine mandates under Title VII of the Civil Rights Act of 1964 ("Guidance"). This Guidance describes in greater detail the framework under which the EEOC advises employers to resolve religious accommodation

9

requests. *See* Guidance, *supra*.

39. The EEOC emphasizes that as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment. *Id*. at K.2.

40. The EEOC states that an employer cannot rely on speculative hardships when faced with an employee's religious objection but, rather, should rely on objective information. *Id*. at L.3.

41. The EEOC states that, in many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship. *Id*. at K.12.

42. The EEOC instructs, "[i]f the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. at L.5.

43. "[T]he definition of religion is broad and protects, beliefs, practices, and observances with which the employer may be unfamiliar." *Id*. at K.12.

44. "The definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers." *Id*. at L.2.

45. "The employer should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." *Id*. at K.12.

46. "Employers should evaluate religious objections on an individual basis." *Id*. at L.2.

47. "An employer should thoroughly consider all possible reasonable accommodations." *Id*. at K.12.

48. In most circumstances, it is possible to accommodate religious beliefs "without imposing an undue hardship." *Id*. at L.3.

### Defendant Did Not Base its Decision on Undue Hardship, Nor Could Defendant Establish Undue Hardship

49. The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

50. The employer bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

51. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

52. Defendant cannot allege undue hardship here because Plaintiff was a remote worker and there was no practical or scientific likelihood that she would transmit COVID-19 to her coworkers.

53. In fact, the New England Journal of Medicine stated in a July 21, 2022, article that unvaccinated individuals transmit the COVID-19 virus for a shorter duration of time than vaccinated individuals. "Duration of Shedding of Culturable Virus in SARS-CoV-2 Omicron (BA.1) Infection," Julie Boucau, Ph.D., et al., *Duration of Shedding of Culturable Virus in SARS-CoV-2 Omicron (BA.1) Infection*, 387 NEW ENG. J. MED. 3 (2022).

54. Without a proffered explanation as to why Defendant would endure undue hardship to accommodate Plaintiff individually, Defendant relies on hypothetical hardships by default.

55. "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." *Townley Eng'g & Mfg. Co.*, 859 F.2d at 615 (9th Cir. 1988).

56. "An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information." Guidance at L.3.

57. Defendant's actions demonstrate a motive to avoid granting religious

accommodations. "[A]n employer who acts with the motive of avoiding accommodation may violate Title VII even if [it] has no more than an unsubstantiated suspicion that accommodation would be needed." *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015).

58. It is Defendant's current position that "being vaccinated for COVID-19 is no longer a requirement for working with the ASPCA."

> As always, our main priority is to ensure that we can all do our work effectively, positively impact the most animal lives and support the health and safety of our employees and the communities we work within. Throughout the COVID-19 pandemic, the ASPCA has established and implemented a variety of policies and protocols to keep our employees and locations safe as we continue our lifesaving work to help animals in need. We continue to strongly encourage staff to be up to date on vaccinations but being vaccinated for COVID-19 is no longer a requirement for working with the ASPCA unless required by applicable federal, state or local laws, whether those legal mandates are effective now or come into effect in the future. We will continue to monitor the public health landscape and revisit this policy if circumstances change.

**COUNT I**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e,** *et seq.*
**RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE**

59. Plaintiff restates the foregoing paragraph as set forth fully herein.

60. Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

13

61. Plaintiff engaged in protected activity when she requested a religious accommodation from Defendant's COVID-19 vaccine mandate.

62. Defendant subsequently retaliated against Plaintiff and her request for accommodation by terminating her.

63. Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were disciplined for failing to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

64. Plaintiff holds sincere religious beliefs that conflict with Defendant's vaccine mandate.

65. Plaintiff informed Defendant of her beliefs.

66. In return, Defendant disciplined Plaintiff for failing to comply with the vaccine requirement by terminating her.

67. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

68. Defendant could have instituted multiple reasonable accommodations without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and regular testing.

69. Of course, the most logical accommodation would have been for

Defendant to allow Plaintiff to continue to work remotely, as she had been doing for the last twenty-one months, and as Plaintiff had been approved to continue doing with occasional travel for the foreseeable future prior to Defendant's vaccine mandate.

70. Defendant, rather than applying common sense, tried to implement a one-size-fits-all approach without articulating to Plaintiff "a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v State Farm Mut. Auto. Ins. Co.*, 463 U.S. 28, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

71. Defendant never satisfactorily explained to Plaintiff why she could not be accommodated.

72. Due to her termination, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith; and Plaintiff will continue to suffer in the future.

73. Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of health insurance coverage for herself and her spouse, and suffered a loss of and impairment of their earning capacity and ability to work.

74. Plaintiff has also been forced to employ the services of an attorney because of Defendant's failure to accommodate.

75. Defendant's actions were intentional and/or reckless.

## COUNT II
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*. RELIGIOUS DISCRIMINATION–RETALIATION

76. Plaintiff restates the foregoing paragraphs as set forth fully herein.

77. It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

78. Plaintiff engaged in protected activity when she requested an accommodation from Defendant's vaccine mandate due to her sincerely held religious beliefs.

79. Defendant subsequently retaliated against Plaintiff by terminating her.

80. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of Defendant's unlawful retaliatory conduct, and she will continue to suffer in the future.

81. Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of an impairment of her earning capacity and ability to work because of Defendant's retaliatory conduct, and

Plaintiff will continue to suffer in the future.

82. Plaintiff has been forced to employ the services of an attorney because of Defendant's retaliatory actions.

83. Defendant's actions were intentional and/or reckless.

## COUNT III
## ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2010 et seq.
## DISCRIMINATION BASED ON RELIGION

84. Plaintiff incorporates the foregoing paragraphs by reference herein.

85. Pursuant to the Elliott-Larsen Civil Rights Act, MCL 37.2010 et seq. ("ELCRA"), Plaintiff is a member of a "protected class" because she espoused religious beliefs prior to her termination.

86. Plaintiff engaged in protected activity when she requested a religious accommodation from Defendant's COVID-19 vaccine mandate.

87. Defendant subsequently retaliated against Plaintiff and her request for accommodation by terminating her.

88. Plaintiff holds sincere religious beliefs that conflict with Defendant's vaccine mandate.

89. Plaintiff informed Defendant of her beliefs.

90. In return, Defendant disciplined Plaintiff for failing to comply with the vaccine requirement by terminating her.

91. Defendant never told Plaintiff why she could not be accommodated.

92. Due to her termination, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith; and Plaintiff will continue to suffer in the future.

93. Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of health insurance coverage, and suffered a loss of and impairment of their earning capacity and ability to work.

94. Defendant's actions were intentional and/or reckless.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

A. An award of lost wages, liquidated damages, punitive damages, costs and attorneys' fees;

B. Interest;

C. Compensatory damages, including front pay and back pay;

D. All further relief as the Court deems just and equitable.

Respectfully submitted<br>
HURWITZ LAW PLLC<br>
<u>/s/ Noah S. Hurwitz</u><br>
Noah S. Hurwitz (P74063)<br>
*Attorney for Plaintiffs*<br>
340 Beakes St. Ste. 125<br>
Ann Arbor, MI 48104<br>
(844) 487-9489

Dated: January 4, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA JOHNSON,

    Plaintiff,

v.

AMERICAN SOCIETY FOR PREVENTION
OF CRUELTY TO ANIMALS,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff Julia Johnson, by and through her attorneys, HURWITZ LAW PLLC, and demands a jury trial for all issues so triable.

    Respectfully submitted,
    HURWITZ LAW PLLC

    */s/ Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)
    Attorney for Plaintiffs
    340 Beakes St. Ste. 125
    Ann Arbor, MI 48104
Dated: January 4, 2023    (844) 487-9489